### McGRATH et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. July 6, 1921.)

#### No. 196.

1. Criminal law ⬤⟹1090(1)—Rulings brought into record only by bill of exceptions.

   Rulings of trial court on matters other than pleadings can only be brought into record by bill of exceptions.

2. Criminal law ⬤⟹1090(5, 15)—Bill of exceptions unnecessary to consideration of indictment or judgment.

   Absence of bill of exceptions does not deprive appellate court of right to pass on the sufficiency of the indictment or judgment of conviction.

3. Criminal law ⬤⟹1116—Where no bill of exceptions and record fails to show that demurrer was filed or ruled upon, sole question is whether indictment is sufficient.

   On appeal by defendants without bill of exceptions, and in absence of record showing that a demurrer appearing therein was pleaded or ruled upon, the case must be decided as though there was no demurrer; no motions to quash, for new trial or in arrest of judgment; no exceptions to evidence nor objections to instructions—the sole question being whether the indictment states facts sufficient to constitute the crime charged.

4. Bribery ⬤⟹6(4)—Indictment held to set forth matter before defendants in official capacity; "prosecution."

   Indictment charging that United States income tax inspectors did ask for, accept, and receive money with intent to have their decision and ac-

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion influenced in a matter, which was before them in their official capacity, to wit, a prosecution for having filed income tax not in accordance with the laws, *held* to set forth matter before the defendants in their "official capacity," or in a "place of trust or profit," as those words are used in Criminal Code, § 117 (Comp. St. § 10287) the word "prosecution" comprehending the procedure of the public prosecutor in bringing an accused person to trial, but in common parlance one who is not the public prosecutor, but who takes necessary steps to have proceedings instituted, is said to prosecute the party charged.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Prosecution.]

5. **Criminal law** ⚖➔1144(3, 13)—**Presumed that defect in indictment was cured by instructions, and that evidence was sufficient.**

It must be presumed on appeal after conviction that defect in bribery indictment charging the acceptance of money by income tax inspectors in connection with "the prosecution of one I. for having filed his income tax not in accordance with the laws of the United States," instead of "income tax return," was cured by instructions, and that the evidence was sufficient to support the verdict, in the absence of a bill of exceptions, and this is also true as to failure to specify in what particular the return filed was defective.

6. **Bribery** ⚖➔1(2)—**Person not appointed as provided in constitutional provision not "officer of the United States."**

A person not appointed in the manner declared under Const. art. 2, § 2, is not an "officer of the United States," but only an agent or employee of the government.

7. **Bribery** ⚖➔1(2)—**Income tax inspectors held "officers of the United States."**

Income tax inspectors appointed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury were officers of the United States within Criminal Code, § 117 (Comp. St. § 10287), relating to bribery, and Const. art. 2, § 2.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Officer.]

8. **Bribery** ⚖➔1(1)—**One not officer of United States may be liable.**

It is not necessary that one should be an "officer" of the United States in order to act "for or on behalf of the United States in any official capacity" within the meaning of Criminal Code, § 117 (Comp. St. § 10287), relating to bribery.

In Error to the District Court of the United States for the Southern District of New York.

John J. McGrath and another were convicted under an indictment charging the asking and acceptance of money with intent to have their decision and action influenced as officers of the United States, and bring error. Affirmed.

The plaintiffs in error, who were defendants below, are hereinafter referred to as defendants.

Griffiths, Sarfaty & Content, of New York City (Charles H. Griffiths, and Raymond H. Sarfaty, both of New York City, of counsel), for plaintiffs in error.

Francis G. Caffey, U. S. Atty., of New York City (John Fine, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

⚖➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROGERS, Circuit Judge. The defendants have been convicted under an indictment which is found in the margin.[1]

The defendant McGrath demurred to the indictment. He has made assignments for error as follows:

"(1) The District Court erred in denying the defendant's motion made at the close of the Government's testimony to direct a verdict of not guilty.

"(2) The District Court erred in denying the defendant's motion in arrest of judgment."

The defendant Hirsch has assigned for errors:

"First. In denying the motion made by the defendant to dismiss the indictment on the ground that the indictment did not set forth any crime against the United States.

"Second. In denying the defendant's motion made at the end of the case for arrest of judgment on the ground that the proof did not show the commission of any crime on behalf of the defendant, Martin A. Hirsch."

[1] The record contains no bill of exceptions.

The assignments of error, both those made by McGrath and those made by Hirsch, depend for their validity upon a bill of exceptions. In the absence of such a bill there is nothing in the record to show that such motions were made, or that the court ruled thereon. The rulings of the court below on matters other than the pleadings can only be brought into the record by a bill of exceptions. The necessity of such a bill has been so frequently pointed out by this court that there is no reason for continued citations upon that subject.

While the transcript of record contains what appears to be a demurrer by defendant McGrath it does not disclose that the demurrer was ever filed or argued, or ruled upon in any way. And the transcript contains nothing to suggest that any demurrer was interposed for defendant Hirsch.

[2] The record technically consists of the indictment, the bill of exceptions, and the judgment. The absence from the record of the bill of exceptions therefore simply precludes the court from passing on questions raised at the trial which the bill of exceptions might have brought here if one had been introduced into the record. Its absence does not, however, deprive us of the right to pass on the sufficiency of the indictment or the judgment.

[3] We are obliged to decide this case as though there was no demurrer to the indictment, no motion to quash, no motion for a new trial

[1] "The grand jurors of the United States of America, within and for the district aforesaid, on their oath present that John J. McGrath and Martin Hirsch, late of the city and county of New York, in the district aforesaid, heretofore, to wit, on the 28th day of September in the year of our Lord 1918, did, at New York, N. Y., in the Southern District of New York and within the jurisdiction of this court, being officers of the United States, to wit, income tax inspectors, ask for, accept, and receive money, to wit, $20, with intent to have their decision and action influenced in a question, matter, cause, and proceeding which was at that time brought before them in their official capacity, to wit, the prosecution of one Irving Bierer, for having filed his income tax not in accordance with the laws of the United States against the peace of the United States and their dignity and contrary to the form of the statute of the United States in such case made and provided. Section 117, U. S. C. C."

or in arrest of judgment, no exceptions to the admission or exclusion of evidence, and no objection to instructions given or withheld. We have no information concerning these matters. The sole question before us, under the circumstances, is whether the indictment fails to state facts sufficient to constitute the crime charged. If it thus fails, then, of course, it is the duty of the court to set aside the judgment. But if the facts alleged are sufficient to sustain the indictment, the judgment must be affirmed. Sonnenberg v. United States (C. C. A.) 264 Fed. 327.

In Serra v. Mortiga, 204 U. S. 470, 476, 27 Sup. Ct. 343, 346 (51 L. Ed. 571), Chief Justice (then Justice) White, speaking for the court said:

"It being then settled that the conviction on a defective indictment is not void, but presents a mere question of error to be reviewed according to law, the proposition to be decided is this: Did the court below err in holding that it would not consider whether the trial court erred because it had not decided the complaint [indictment] to be bad, when no question concerning its sufficiency was either directly or indirectly made in that court? Thus to understand the proposition is to refute it. For it cannot be that the court below was wrong in refusing to consider whether the trial court erred in a matter which that court was not called upon to consider and did not decide."

The complaint in that case was based on the Penal Code of the Philippine Islands, and the writ of error was issued to the Supreme Court of the Islands, which had entered a judgment of conviction on a complaint which was alleged to be fatally defective. The proposition was that the court should have reversed the conviction because of the contention as to the insufficiency of the complaint, when no such question had been raised before final judgment in the trial court, and when, as a necessary consequence of the facts found by the court, the testimony offered at the trial without objection or question in any form established a very essential ingredient of the crime. It may be the duty of the court to affirm a conviction on a defective indictment.

The indictment in question is based on section 117 of the Criminal Code (Comp. St. § 10287). It provides that:

"Whoever, being an officer of the United States, or a person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or office of the government thereof; * * * shall ask, accept, or receive any money, or any contract, promise, undertaking, obligation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value, with intent to have his decision or action on any question, matter, cause or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, influenced thereby, shall be fined not more than three times the amount of money or value of the thing so asked, accepted, or received, and imprisoned not more than three years; and shall, moreover, forfeit his office or place and thereafter be forever disqualified from holding any office of honor, trust, or profit under the government of the United States."

The Revised Statutes, § 1025 (Comp. St. § 1691), provide that no indictment shall be deemed insufficient by reason of any defect or imperfection in matter of form only, which does not tend to the prejudice of the defendant. Under this provision the form of an averment and the manner of stating a fact are treated as matters of form.

The defendants urge three defects in the indictment. The first is that it appears upon the face of the indictment that the defendants did not have any matter before them in their official capacity because the specification is that the matter was a prosecution of a person, and not any investigation by them. The second defect in the indictment is that the supposed prosecution involved a charge of filing an income tax not in accordance with the laws of the United States, which it is claimed is not any matter for which a person could be prosecuted. The third objection is that the defendants are stated to be officers of the United States. They argue that any of these defects, taken alone, is enough to vitiate the indictment herein, but that the three errors taken together clearly demonstrate that the indictment is defective, and that no legal conviction can be had thereunder.

[4] We are thus brought to inquire in the first place whether the matter which the indictment sets forth was one which can properly be said to have been before the defendants in their "official capacity," or in their "place of trust or profit" as those words are used in section 117 of the Criminal Code. We are obliged to answer this question in the affirmative.

That section of the Code was before the court in United States v. Birdsall, 233 U. S. 223, 230, 34 Sup. Ct. 512, 514 (58 L. Ed. 930), and it was declared that every action that is within the range of official duty is within its purview. The question is whether the action to be influenced was official action. It was said that to make the action official it is not necessary that it should be prescribed by statute. It is sufficient that it was governed by a lawful requirement of the department under whose authority the officer acted. It was also said not to be necessary that the requirement should be prescribed by a written rule or regulation. It might be found in an established usage which constituted the common law of the department and fixed the duties of those engaged in its activities.

"In numerous instances," said the court, "duties not completely defined by written rules are clearly established by settled practice, and action taken in the course of their performance must be regarded as within the provisions of the above-mentioned statutes against bribery."

It seems that we must hold that the action of the defendants which was to be influenced was official action within the broad and comprehensive meaning above declared.

The action to be influenced is described in the indictment as a "matter, cause, and proceeding which was at that time brought before them in their official capacity, to wit, the prosecution of one Irving Bierer." The contention of the defendants is that they could have taken no official action in relation to the prosecution of Bierer, as that was a matter with which they officially had nothing to do, it not being the duty of income tax inspectors to prosecute the violators of the Income Tax Law (39 Stat. 756). The power to prosecute all persons charged with crime against the United States is, it is said, in the United States attorneys or in the Attorney General. Revised Statutes, p. 145, § 771 (Comp. St. § 1296), declares that—

"It shall be the duty of every district attorney to prosecute, in his district all delinquents for crimes and offenses cognizable under the authority of the United States. * * * "

So that the objection seems to be that the prosecution of Bierer could not be "a matter, cause and proceeding" before the defendants in their official capacity.

But this is to ignore the fact that the Commissioner of Internal Revenue, his assistants, agents, and inspectors, have duties to perform in respect to the prosecution of offenders under the revenue laws. The duties of their office involve the making of investigations and reports and decisions which are vital to the prosecution of those who violate the Income Tax Law and thereby defraud the government. Without the honest performance of these official duties the offenders would never be brought to trial. These officials have been described as vital cogs in the machinery of prosecution.

The word "prosecution" comprehends the procedure of the public prosecutor in bringing an accused person to trial. In common parlance one who is not the public prosecutor in the technical sense, but who takes necessary steps to have criminal proceedings instituted against an offender, is said to prosecute the party charged. And it seems clear to us that in the performance of their official duties income tax inspectors must take action which in proper cases inevitably leads to criminal prosecutions. The suppression of facts which come to the knowledge of the inspectors in the examination of income tax returns is action upon a matter which is before them in "an official capacity," and is so vitally related to the question of the prosecution of a violator of the law as to bring the matter within the purview of the statute.

[5] We come now to consider the second objection which is that the matter alleged to have been brought before the defendants in their official capacity is not sufficiently described. The language used describes the matter as "the prosecution of one Irving Bierer, for having filed his income tax not in accordance with the laws of the United States." This is said to be a fatal defect, because the so-called prosecution is based upon the alleged filing of something which is not required to be filed by any law of the United States. What the taxpayer is required to file, is not his income tax but his return. Then after he has filed his return the tax is assessed by the Internal Revenue Department after the examination of the return filed by the taxpayer, and on the return so filed. The indictment is also said to be defective in that there is no specification showing in what respect the paper filed was defective. But an indictment may be so defective in form or substance that a court cannot sustain it upon a motion to quash or on a demurrer, yet it may be the duty of the court to disregard the objection if it is not made until after verdict. In illustration of this reference may be made to Reg. v. Goldsmith, 12 Cox, C. C. 479. In that case the indictment failed to charge the commission of a crime. It charged the defendant with receiving goods, obtained by false pretenses, but it did not state that the false pretenses had been made with intent to defraud. And the intent to defraud was under the statute essential to the com-

mission of the offense; the false pretenses without the intent to defraud not being sufficient. The court, however, unanimously sustained the conviction under the indictment, although it failed to charge a crime, the defect being cured by the verdict. In the course of his opinion, Bovill, C. J., said that—

"We must assume that the judge has properly directed the jury, and that the jury correctly found their verdict."

The verdict could not have been arrived at unless the evidence showed that the false pretenses were made to defraud, and the court assumed that the jury was so instructed.

The rule on this subject is correctly stated in Bishop's New Criminal Procedure (Ed. 1913) vol. 2, § 707a, as follows:

"At common law, the verdict cures some things, as to which the rule is the same in criminal causes as in civil. It is that though a matter either of form or of substance is omitted from the allegation or alleged imperfectly, yet if under the pleadings the proof of it was essential to the finding, it must be presumed after verdict to have been proved, and the party cannot now for the first time object to what has wrought him no harm."

The defect in the indictment in the instant case is evidently a clerical mistake. It cannot possibly have worked prejudice to the defendant, and we must assume that the judge below properly charged the jury, and that the evidence was sufficient to support the verdict, and we therefore hold that the verdict cured the defect.

It may be said in this case as it was said in Lamar v. United States, 241 U. S. 103, 116, 36 Sup. Ct. 535, 539 (60 L. Ed. 912):

"It is moreover to be observed that there is not the slightest suggestion that there was a want of knowledge of the crime which was charged or of any surprise concerning the same, nor is there any intimation that any request was made for a bill of particulars concerning the details of the offense charged. Under this situation we think that the case is clearly covered by section 1025, Revised Statutes."

This brings us in conclusion to the third objection which is that the indictment charges that the defendants are officers of the United States, to wit, income tax inspectors. The Constitution of the United States, article 2, § 2, prescribes how officers of the United States shall be appointed. It reads as follows:

The President "shall nominate, and by and with the advice and consent of the Senate, shall appoint ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by law. But the Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the courts of law, or in the heads of departments."

[6, 7] The argument is that a person not appointed in the manner above declared is not an officer but an agent or employee of the government. That such is the law is certainly beyond controversy. United States v. Germaine, 99 U. S. 509, 25 L. Ed. 482; United States v. Mouat, 124 U. S. 303, 8 Sup. Ct. 505, 31 L. Ed. 463; United States v. Smith, 124 U. S. 525, 8 Sup. Ct. 595, 31 L. Ed. 534; Auffmordt v. Hedden, 137 U. S. 311, 326, 11 Sup. Ct. 103, 34 L. Ed. 674. That a

person who is appointed in accordance with the constitutional provision quoted above is an officer of the United States is, of course, clear. In United States v. Germaine, supra, Mr. Justice Miller speaking for the court and commenting upon article 2, § 2, of the Constitution declared that it was not to be supposed that Congress, "when enacting a criminal law for the punishment of officers of the United States, intended to punish any one not appointed in one of these modes." In that case a surgeon appointed by the Commissioner of Pensions was held not to be an officer of the United States under section 12 of the act of 1825, which provided that every officer of the United States who is guilty of extortion under color of his office shall be punished in the manner specified in the act. 4 Stat. 118 (Comp. St. § 10253). The Commissioner of Pensions was held not to be "the head of a department" within the meaning of the constitutional provision referred to.

In United States v. Hartwell, 6 Wall. 385, 18 L. Ed. 830, a clerk in the office of the Assistant Treasurer of the United States, at Boston, and appointed by that official with the approbation of the Assistant Secretary of the Treasury as the acting head of the department, was held to be appointed by "the head of a department" within the meaning of the constitutional provision, and was accordingly properly described as an "officer" of the United States. And in the Germaine Case the court declared that the Hartwell Case "is not, as supposed, in conflict with these views. It is clearly stated and relied on in the opinion that Hartwell's appointment was approved by the Assistant Secretary of the Treasury as acting head of that department, and he was therefore an officer of the United States."

In the instant case the defendants were appointed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury. We are unable, therefore, to see why they are not officers of the United States within the rule laid down in the Hartwell and Germaine Cases.

[8] It is not, however, necessary that one should be an "officer" of the United States in order to act "for or on behalf of the United States, in any official capacity," within the meaning of the section of the Criminal Code, under which the defendants were indicted. In United States v. Van Leuven (D. C.) 62 Fed. 62, it was held that an examining surgeon appointed by the Commissioner of Pensions was not an officer of the United States. It was nevertheless held that in the discharge of his duty as a member of a board of examining surgeons he was a "person acting for or in behalf of the United States" in "an official capacity" under and by virtue of the authority of an office of the government, to wit, the department of pensions. The section of the Criminal Code under which the defendants are indicted applies in express terms, not only to an "officer" of the United States, but to "a person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or office of the government thereof." That the defendants are plainly within its terms cannot be seriously denied.

Judgments affirmed.